VINCENT v. TONOPAH MINING CO. OF NEVADA et al.

(District Court, D. Delaware.   August 8, 1913.)

No. 299.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PROCESS FOR TREATMENT OF ORES.

The Brown patent, No. 781,711, for a process for the treatment of precious metal-bearing ores, the essential feature of which consists in changing the order of the well-known steps in the recovery of metals from

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the ores by the cyanide process so that the cyanide treatment for the recovery of the fine values precedes concentration, to which only the residue or tailings is subjected, while not entitled to a broad construction in view of the prior art, is valid and is infringed by a process in which substantially the same steps are taken in the same order, although other steps not included or required by the patent are added.

2. WORDS AND PHRASES—"LEACHING."

As applied to the cyanide process of treating ores, the essence of "leaching" does not depend upon any special mode of applying to the ore the dissolving cyanide solution, but upon the fact of the application producing dissolution of the finer values.

In Equity. Suit by Joseph A. Vincent against the Tonopah Mining Company of Nevada and the Desert Power & Mill Company. On final hearing. Decree for complainant.

Horace Pettit, of Philadelphia, Pa., for complainant.

J. Harvey Whiteman, of Wilmington, Del., and Joseph C. Fraley, of Philadelphia, Pa., for defendants.

BRADFORD, District Judge. [1] This suit was brought by Joseph A. Vincent against the Tonopah Mining Company of Nevada and the Desert Power & Mill Company, both of them corporations of Delaware, charging infringement of letters patent of the United States No. 781,711, dated February 7, 1905, granted to Alden H. Brown, for "Improvements in Processes for the Treatment of Precious-Metal-Bearing Ores," and praying an injunction and an account. The complainant is assignee and sole owner of the patent in suit. In the description the patentee says:

"My invention relates to a process for the treatment of precious-metal-bearing ores, and embraces the treatment of the ore by a solution of cyanide of potassium or of other alkaline cyanide and the subsequent treatment of the ore by concentration. It has been the practice for many years in plants where the concentration and cyanide processes are used in combination to treat the ore, first by concentration, and, secondly, by cyanide. The process which I have invented and which I now have in successful operation is a reversal of this proceeding with the addition of certain special features in connection with the cyanide step. The advantage in treating many ores by my present system is due to the fact that in case of most gold and silver bearing ores the use of water in crushing by stamps or rolls or in connection with the concentrating process occasions much loss of values by what is technically known as 'sliming,' resulting from the fact that a large percentage of the values in the ore treated is reduced to so fine a state of division that it is taken up in suspension by the water used, making it difficult, if not impossible, to settle these values for further treatment within the limits of a plant of ordinary construction for the reason that in the case of many ores these slime values remain in suspension for many hours. It will therefore be understood that in the case of ores of this sort, if amalgamation, concentration, or other process involving the use of water for crushing or treatment is used preliminary to the cyanide process, it will be necessary to have a very extensive system of settling-tanks in order to recover these suspended values and hold them in the mill, so that they may be subjected to further treatment. It is a well-known fact that the cyanide process recovers only the fine values, and in the treatment that I have devised these fine values are recovered by the cyanide process in the beginning, leaving only the coarser values, which are readily recoverable by concentration, the latter being specially adapted for saving this class of values. * * * The special features of my improve-

ment so far as the cyaniding process is concerned consist in cutting down the volume of solution used by settling and pumping back the solution to the stamp battery and the use of cyanide solution to create the ascending current in the classifier."

The charge of infringement has been restricted to claim 1, which is as follows:

"1. The herein-described process for the treatment of ore consisting in first pulverizing the ore in the presence of cyanide solution; second, subjecting the ore to hydraulic classification by the introduction of cyanide solution at the bottom of an overflow-tank to produce an ascending current; third, leaching the ore by the use of cyanide solution whereby the finer values of the ore are dissolved; fourth, removing the dissolved metallic values from the ore in any suitable manner; and finally subjecting the residue of ore to concentration."

Claim 1 plainly indicates that "subjecting the residue of ore to concentration" was the final step in the process of that claim. For prior to the subjection of the residue of the ore to concentration, according to the requirements of the claim, first, the ore must be pulverized; second, subjected to hydraulic classification as therein specified; third, leached by the use of cyanide solution whereby the finer values of the ore are dissolved; and fourth, the removal of the dissolved values from the ore. These four steps having been taken the residue of the ore or tailings are subjected to concentration. That the patentee regarded his invention as essentially requiring concentration as the last step in his process not only accords with the scope and spirit of his alleged invention, but is to be deduced from the description. For in it he states that the invention "embraces the treatment of the ore by a solution of cyanide of potassium or of other alkaline cyanide and the subsequent treatment of the ore by concentration"; that his process is a reversal of the old practice "to treat the ore, first, by concentration, and, secondly, by cyanide"; that "the cyanide process recovers only the fine values, and in the treatment that I have devised these fine values are recovered by the cyanide process in the beginning, leaving only the coarser values, which are readily recoverable by concentration, the latter being specially adapted for saving this class of values"; that "so far as the broad idea of employing the cyanide step previous to concentration is concerned the advantage in this respect would be equally great if dry crushing instead of wet crushing were employed"; that "after the cyanide treatment has been completed the sand-tailings from the leaching tank" are transferred by the means therein specified to a mixer which "distributes the tailings to the concentrating table"; and that "by using these processes in the order set forth in this specification it is practicable to recover a high percentage of the values without the use of roasting," &c. The patent in suit was granted virtually for changing the order of certain well-known steps in the recovery by the cyanide process of gold or other metals from precious-metal-bearing ores, and assuming that it is valid, claim 1 in view of the prior art is not entitled to a broad construction. The patentee in various forms, as has been shown, stated and reiterated the idea as the essence of his invention that the cyaniding steps, within the meaning of the patent, must be completed before

concentration occurs, and the complainant must be held bound by and restricted to the order of steps set forth in claim 1, certainly so far as that order is mentioned as between cyaniding and concentration. At the hearing the complainant's counsel admitted in open court that the vital question in the case was whether the leaching of the finer values within the meaning of claim 1 occurs prior to concentration. Infringement is the principal issue in the case, the complainant contending that the defendants in the process practiced by them use every step in the combination of claim 1, and the latter alleging that they have not used either a combination of all the steps of the patented process or a combination including steps arranged in the same order. The complainant contends that the process practiced by the defendants' embraces treatment of ore by a solution of cyanide of potassium, and also the treatment of the ore at a later stage by concentration. The first step in the patented combination process is pulverizing the ore in the presence of cyanide solution and is common to the practice of both the complainant and the defendants.

The second step is subjecting the ore to hydraulic classification by the introduction of cyanide solution at the bottom of an overflow-tank to produce an ascending current. In the process practiced by the defendants, as in that of the complainant, classifiers with an ascending current of cyanide solution introduced at the bottom, and performing the same immediate function, as classifiers, in the separation of slimes from the granular material or sands, as the classifiers of the complainant, were, until November, 1908, used and calculated to perform or assist in the performance of the step next following the pulverizing of the ore in the stamp battery. What difference there was between the classifiers of the complainant and those of the defendants did not differentiate their immediate function. At the above named date the defendants discontinued the introduction of the cyanide solution at the bottom of the classifiers to produce an ascending current, and since that time the only current in the defendants' classifier has been due to the introduction of the solution along with the ore at the top, and the rise and overflow of the lighter portions over its periphery. With respect to this change in the classifier the counsel for the defendants in their brief of argument say: ·

"This matter of detail, however, does not go to the root of the charge of infringement, and in the main portion of the argument, about to be given, it will be ignored. The Court is asked to pass upon the issue as it was raised in regard to the Defendants' first installation from 1907 down to 1908; for the defense of noninfringement does not depend upon any minor matters, but goes to the essence of the subject."

Passing for the present any discussion of the Huntington mills and their function, the third step is leaching the ore by the use of cyanide solution whereby the finer values of the ore are dissolved. Much time and research have been spent by the counsel for the respective parties on the question of what constitutes leaching within the meaning of claim 1. The claim itself contains a definition, for it is a process of dissolving the finer values of the ore by the use of cyanide solution. Doubtless the term "leach" or "leaching" may connote different

methods of application of the leaching solution in different and varying cases. In Moore Filter Co. v. Tonopah-Belmont Development Co., 201 Fed. 532, 119 C. C. A. 626, the Moore patent No. 764,486, for a filtering process for recovering the metal contained in metal-bearing slimes was sustained and held infringed. That case, however, was in principle different from and does not control this case. But the circuit court of appeals considered the subject of the cyanide ore process and defined leaching, saying:

"The cyanide ore process came into use about 1887, and is the real foundation of the tremendous increase of gold production in the last two decades. It is now the prevalent method of treatment. In it the ore is first crushed and then placed in tanks containing a solution of cyanide of potassium. This solution percolates through the crushed pulverized mass, and, being a solvent of gold, carries off such gold as is subjected to its action. This is called 'leaching,' and any crushed ore through which percolation took place was termed 'leachable.' For example, if the ore treated was of such a character, that, when crushed, it was reduced merely to the condition of sand, then the recovery of its metal by the cyanide solution might be effected by two methods. In the first method the cyanide solution would be poured on a bed of sandy crushed ore and be allowed to percolate through it. In its passage the solution dissolved the metal and passed off as a clear liquid to zinc boxes, or other well-known means of reclaiming metals in solution. This very simple method was called leaching. The second was decantation, wherein the crushed sandy material, after having been agitated in the cyanide solution, was permitted to settle, so that the clear liquid containing the dissolved metal might be decanted."

[2] But the essence of leaching does not depend upon any special mode of applying to the ore the dissolving cyanide solution but upon the fact of the application of the solution to the ore producing dissolution of the finer values. There can be no question that the process of claim 1 and the defendants' process include leaching by the use of cyanide solution for the purpose of dissolving and recovering the finer values of the ore, however the two processes may differ in details and the order of the steps included in them. The circumstance that in the defendants' process the ore is subjected to the cyanide solution and leached both at the time of its pulverization in the stamp battery and at the time of its repulverization or grinding in the Huntington mills, while in the complainant's process there is no repulverization or grinding in Huntington mills or the like, does not alter the fact that in each case the process includes "leaching the ore by the use of cyanide solution whereby the finer values of the ore are dissolved." The slimes and sands treated in the complainant's classifiers on escaping therefrom pass respectively to the slime tank and to the leaching tank, and in the slime tank the slimes are treated "by agitation, settling and decantation in order to remove the gold bearing solution, this part of the treatment being carried out in accordance with the standard practice"; most of the cyanide solution in the stamp battery going from the classifier with the slimes to the slime tank and being afterwards pumped back to the stamp battery. But after the slimes and sands are separated by the defendants' classifiers the sands are carried to the Huntington mills where they are repulverized, and on escaping from the Huntington mills the mixed sands and cyanide solution are re-commingled with the slimes from which they had been

separated immediately before the grinding of the former in the Huntington mills, and the recommingled materials pass to the Wilfley concentrating tables. The use of the Huntington mills in the defendants' process is for the purpose of observing economy in securing the regrinding of only such portion of the sands originally pulverized in the stamp battery as require that treatment, but does not affect the question of the occurrence of leaching. The use of the Huntington mills in the defendants' process could not avoid the charge of infringement, provided all of the elements of the complainant's process are included in the defendants' process and operate as a combination in substantially the same way.

The fourth step in the patented process is removing the dissolved metallic values from the ore in any suitable manner and is satisfied by the removal of such dissolved values, as stated, in any suitable manner; no particular method or means of removal being specified or required.

The fifth step is "finally subjecting the residue of the ore to concentration." In the description the patentee says:

"After the cyanide treatment has been completed the sand-tailings from the leaching-tank G are transferred by means of suitable conveyors to the tailings-bin P, which is shown in outline behind the tanks I I. From this tailings-bin these tailings are sluiced into a mixer K through a trough J.' The mixer distributes the tailings to the concentrating-table L. * * * The term 'concentration' is used in this specification in its technical or metallurgical sense and must be distinguished from 'amalgamation,' in which mercury is always employed."

The tailings that escape from the complainant's concentrating tables are the comparatively worthless residue of the ore left at the conclusion of his process. It is true that in the complainant's process, as I understand it, no successive sets of concentrating tables are used, with leaching of values going on between them. There is only one set of such tables and the discharge of their function marks the end of his process. But I think that the defendants have nevertheless been guilty of infringement. They have used in their process all the steps contained in the complainant's process and in the order required by claim 1. There is, first, the pulverizing of the ore in the presence of cyanide solution in the stamp battery; second, the subjection of the ore to hydraulic classification within the meaning of the second step; third, leaching of the ore, not only in the stamp battery, but in the Huntington mills by the use of cyanide solution whereby the finer values of the ore are dissolved; fourth, the removing of the dissolved metallic values of the ore to the concentrating tables; and finally, the subjection of the residue of the ore to concentration. It is true they have added a number of steps or features not included or required in claim 1, but the steps and features so added do not operate to negative infringement of the combination process as embodied in the earlier steps of the process practiced by them. And the last step of their process, in so far as it covers the process of the complainant, consists of the same step, namely, the subjection of the residue of the ore to concentration.

A large amount of evidence has been taken and much has been said by counsel on the question of percentages of metal values recovered in the infringing portion of the defendants' process and the portion subsequent thereto. But it has been shown that each of the two portions of the defendants' process yields a large percentage of such values; and whatever effect this fact may have on the amount of profits and damages to be recovered does not affect the question of infringement.

On the whole I think that claim 1 of the patent in suit must be sustained, and a decree rendered in favor of the complainant. Let a decree be prepared and submitted.